## Hancock *vs* Craddock.

APPEAL FROM THE FRANKLIN CIRCUIT.

*Fraud. Rescission. Allegation and proof.*

JUDGE MARSHALL delivered the Opinion of the Court.

THIS is a case depending almost exclusively upon questions of fact, and not deeming it necessary to state at large our views of the evidence, we shall state only the conclusions to which, upon a careful comparison of the allegations of the parties with the documentary and other testimony, we have come. 1. We are satisfied that a division of the Ward tract, exclusive of the 233½ acres sold in lots on the turnpike road, was made between Hancock and Craddock about the 15th of November, 1836; that it is evidenced by the agreement of that date and the plat thereto annexed, and that the true division line as then agreed on and fixed, has been adopted by the Circuit Court in the decree before us.

We are also satisfied that said division and division line were never abandoned, altered, or set aside by any subsequent act of the parties, and that their subsequent agreements, when properly construed, though they may not expressly recognize, seem to imply the existence of a division, and should, therefore, be deemed confirmatory of it rather than inconsistent with it; other acts and admissions of Craddock are of the same import.

And as the allegations and proof do not authorize the conclusion that there was any fraud on the part of Hancock in regard to the division as made, or that Craddock labored under any mistake or ignorance of fact in regard to the different portions of the land, or was in any manner deluded or imposed upon by Hancock, it would be very difficult to make out a case, by the mere opinion of witnesses, which would authorize the Chancellor to set aside the division as made by the parties, on the mere ground of inequality of value.

*Where the allegations and proof do not authorize a conclusion of fraud in a division, it is very difficult to make out such fraud by the mere opinion of witnesses, from inequality, which would authorize the setting aside such division.*

In this case, however, the decided preponderance of opinion, and of that opinion which, from the character of

*Preponderance of evidence in favor of the di-*

the witnesses and their acquaintance with the subject, as well as their numbers, is entitled to the greatest weight, is greatly in favor of the equality of the division at the time it was made, though several witnesses, entitled to the highest respect, are of a different opinion.

It is true, that looking to the sales which have been made by the two parties on their respective sides of the division line, there might seem to be a considerable disparity between the value of the respective portions allotted to them.    But these sales were made by the parties respectively, at different periods, between which we know that there was a decided change in the general condition of the country, and may presume that there may have been a corresponding fluctuation in the market value of land.    Besides, the sales were not made on the same terms, and they do not furnish the means of ascertaining, with any precision, the cash value of the land sold, nor the comparative value of the different portions; Craddock too, admits that he sold at a sacrifice, while Hancock in these sales, as well as in those made for the common benefit, would seem to have been remarkably successful; and as it appears that before these sales he commenced very large and expensive improvements upon his part of the land, and sold some of it to persons whom he had employed, it is not unreasonable to suppose that the vendible value of his land was increased, to some extent, by his own exertions.    It is said by some of the witnesses that this was the case.    Some witnesses, speaking of the relative value of different portions of the land on the two sides of the division line, indicate that there was a considerable disparity, but there is some discrepancy in this part of the testimony; and its tendency is outweighed by what may be termed the general current of the testimony, which goes to show that at the time of the division, and independently of the improvement made by Hancock and his vendees, the portion of Craddock, taken as a whole, was equal, and as many witnesses think, superior to that of Hancock, taken as a whole.    We are of opinion, therefore, that there is nothing in the case which would authorize the Chancellor to

set aside the division, though it may not have been precisely equal.

2. By agreement of the parties of 24th of September, 1834, Hancock was to make sale of the lots, to be laid off on the turnpike road, he taking on himself the trouble and expense of laying off and selling, &c. and undertaking "not to sell for less than eighty dollars per acre;" and "in compensation for his services, he was to receive from the last amount of sales thereof, all which he might get over and above eighty dollars an acre as aforesaid, or five per cent. allowance, either that he might select."

Hancock would not have complied with his undertaking as to price, by selling for $80 per acre, to be paid in ten years, without interest; and if he had sold for $90 or $150, to be paid in ten years without interest, he would not have been entitled to the excess above $80, at the time of payment. He was not to sell for less than $80 cash in hand, or its legal equivalent, and the excess to which he might be entitled was to be estimated by the same standard.

He was not bound to make his selection before the sale, nor at any time afterwards, until the time came for him to demand and receive his compensation, nor until a settlement between the parties. The appropriation of the last notes due on account of the sales, to the payment of the purchase of the land, with the assent, and as it should seem by the requirement of Craddock, was no waiver of his right of selection, and if it would otherwise have had that effect, the right was reserved by the various references to the agreement on which it was founded, as furnishing the rule for final settlement.

But, although he may not have made a formal election of the measure of compensation before filing his answer, it cannot be doubted that he had made his election, in fact, long before, and that it was known to Craddock. This fact would seem to be proved by the very nature of the case; it is further proved by the admission of Craddock himself, as stated by one witness, and by the statement of several others, that it was known that Hancock was to get the excess above $80 per acre, produced by the sale.

The Court, therefore, did not err in allowing him this excess for his compensation, to which, however extravagant it may appear since the sale, he was entitled by contract, nor was there any error in allowing only the excess of the cash value of the sale money above $80 per acre, estimated at the time of the sale.

The 211¼ acres of land belonging to Craddock, but included in his conveyance of 20th September, 1837, to Hancock, was not covered by Hancock's mortgage to Carter, and the mortgage to the Bank of the United States, which did cover it, being released, it was properly directed to be conveyed to Craddock, subject only to the lien of Hancock for the balance in his favor on the account stated by the auditor and adopted by the decree. Hancock was not bound to take it at $40 or $50 per acre, or at any other price under any written agreement between the parties, and he had no right to claim it at valuation, under the alledged verbal agreement, which Craddock denies. Nor has Hancock, in our opinion, any equitable right to discriminate between the value of Craddock's land and that of his own, included in the sale to Robards at $40 per acre, and he was properly disallowed *his claim* founded on such discrimination.

In all these respects, therefore, the decree is free from error; and with regard to the lien for the balance in favor of Hancock, which the decree recognizes and directs to be reserved in the conveyance of the 211¼ acres to Craddock, but does not enforce, we are of opinion that there is no ground for reversing the decree in favor of either party. Craddock being justly indebted to Hancock in the amount decreed against him, has no right to complain of the mere declaration of a lien for a balance growing out of the partnership in the land, which he may remove by paying the debt. And Hancock has no right to complain that the Chancellor has not proceeded to sell the land before the remedy by execution has been tried. He has not prayed for such enforcement, nor made out, explicitly, any good ground therefor. And the decree provides for his ultimate security by holding the land subject to his demand.

Wherefore, the decree is affirmed, both upon the origi- <span style="float:right">THE COM'TH.'<br>*vs*<br>BLANTON'S EX-</span>
nal and the cross errors.                                        ECUTORS *et al*

*Guthrie* for appellant; *Pirtle and Loughborough* for
appellee.